# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

SHARITA GILES                                           PLAINTIFF

V.                          CIVIL ACTION NO. 4:14-CV-00024-SA-JMV

SHAW SCHOOL DISTRICT, et al.                       DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Sharita Giles, a female, initiated this action against her former employer Shaw School District ("SSD") and members of its School Board, bringing various claims under Title VII, as well as under 42 U.S.C. Section 1983 for alleged Fourteenth Amendment violations. Defendants filed Motions for Summary Judgment [70, 71, 72, 73, 74, 75, 76] as to all claims. After reviewing the motions, responses, rules, and authorities, the Court finds Defendants' motions to be well taken.

*Factual and Procedural History*

Plaintiff began employment with SSD in 2008, serving as principal of McEvans School, an elementary and middle school located in Shaw, Mississippi.[1] In November 2012, SSD Superintendent Cederick Ellis recommended to the School Board that four of the District's administrators including Plaintiff receive a five percent pay increase for the upcoming year. The Board, comprised of three females and two males, voted to approve raises for the female Special Education Director, the female Federal Programs Director, and L'Kenna Whitehead, the male principal at Shaw High School ("SHS"). A motion to approve a raise for Plaintiff, however, failed for lack of a second.

---

[1] Subsequent to the commencement of this suit, SSD joined with Benoit School District and West Bolivar School District to form the West Bolivar Consolidated School District.

The following February, the Board conducted a meeting to consider annual employment renewals. Georgia Ballard, a female, had recently been elected to replace a male board member, making the Board's gender composition for the February meeting four females and one male. Ellis recommended that the Board renew Plaintiff's employment as principal of McEvans School, but the Board again declined to adopt Ellis' recommendation and voted 3-2 not to renew Plaintiff's employment. At the same meeting, Whitehead was renewed as principal of SHS by unanimous vote.

Following her non-renewal, Plaintiff requested and received a hearing before the School Board pursuant to Mississippi's School Employment Procedures Law. *See* MISS. CODE ANN. §§ 37-9-109, 111. After a multiple-day hearing in July 2013, no member changed his or her vote from the February meeting, and the Board upheld its original non-renewal decision by a 3-2 vote.

Plaintiff filed three separate charges with the Equal Employment Opportunity Commission ("EEOC") following her denied raise, her non-renewal, and the hearing. Plaintiff received right-to-sue letters for each charge, and then commenced this suit against SSD and its individual board members, alleging retaliation pursuant to Title VII, gender discrimination pursuant to Title VII and the Equal Protection Clause, and substantive and procedural violations of the Due Process Clause.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Importantly, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Discussion and Analysis[2]*

Equal Protection and Title VII

Plaintiff claims that her non-raise and non-renewal constitute gender discrimination in violation of the Equal Protection Clause and Title VII. She also claims that the non-renewal violated Title VII as retaliation for her first charge with the EEOC filed subsequent to the non-raise. She attempts to establish these claims with circumstantial evidence and must, therefore, navigate the *McDonnell Douglas* burden-shifting framework. *Haire v. Bd. of Supervisors of La.*

---

[2] Plaintiff has properly invoked 42 U.S.C. § 1983 in pursuing her equal protection and due process claims. As will be seen, the Court, in addressing the viability of such claims, finds insufficient evidence of constitutional violations and thus need not resolve other issues typical in Section 1983 analysis, such as whether the District's policy resulted in the alleged violations or whether the individual board members are entitled to qualified immunity. *See Becerra v. Asher*, 105 F.3d 1042, 1047-48 (5th Cir. 1997) ("[W]ithout an underlying *constitutional* violation, there can be no § 1983 liability imposed on the school district or the individual supervisors.")

*State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)); *Gaalla v. Brown*, 460 F. App'x 469, 480-81 (5th Cir. 2012) (reversing district court for failing to employ *McDonnell Douglas* framework on equal protection claims in the absence of direct evidence of discrimination). Through this framework, Plaintiff must first raise an inference of discrimination or retaliation by establishing her prima facie case. *Id.* (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003)). If Plaintiff succeeds, the burden then shifts to Defendants to articulate a legitimate non-discriminatory reason for the adverse actions taken. *Id.* If Defendants advance a sufficient reason, the burden shifts back to Plaintiff to show that Defendants' proffered reason "is really a pretext" for unlawful discrimination or retaliation. *Id.* Pretext may be established by showing that a discriminatory or retaliatory "motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that the employer's explanation is unworthy of credence." *Id.* (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

Even if Plaintiff were able to satisfy her prima facie burdens here, the Court finds that her discrimination and retaliation claims are nonetheless lacking. As a legitimate non-discriminatory reason, Defendants advance that Plaintiff was neither given a raise in 2012 nor renewed for employment in 2013 due to the fact that McEvans School was low performing. This reason is corroborated by testimony of several board members and a letter dated February 20th, 2013, in which Ellis explained that Plaintiff was "non-renewed for maintaining a low performing school at McEvans School." In view of Defendants' assertion and the record evidence to support it, the Court finds that Defendants have satisfied their burden of producing a legitimate non-discriminatory reason for the employment actions of which Plaintiff complains. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)

(Defendants' burden is "one of production, not persuasion," and it involves "no credibility assessment.") (citation and quotation omitted).

Thus, the burden shifts to Plaintiff to show that Defendants' reason is pretext for gender discrimination and/or retaliation for filing the EEOC charge. *Haire*, 719 F.3d at 363 (citation omitted). In an attempt to discharge her pretext burden, Plaintiff relies on (1) the board's alleged failure to provide her with the reasons for her denied raise and non-renewal, (2) evidence allegedly contradicting the board's conclusion that McEvans School was low performing, (3) allegedly preferential treatment for Whitehead, the male principal at SHS, and (4) board member Ballard's allegedly inconsistent statements about Plaintiff. The Court considers each argument in turn, ever mindful of the imperative to "review the record as a whole" in determining whether Plaintiff has made a sufficient showing of pretext. *Reeves*, 530 U.S. at 151, 120 S. Ct. 2097.

Plaintiff first contends that the board members failed to provide her the reason for the denial of a raise and for her non-renewal, and that such failure constitutes pretext. The Fifth Circuit recently considered a similar argument in *Squyres v. Heico Cos.*, 782 F.3d 224, 233-34 (5th Cir. 2015). The plaintiff in that case argued the defendants' failure to provide him a reason for non-renewal demonstrated pretext. *Id*. But the record in *Squyres* contained an email explaining exactly why the Plaintiff was being non-renewed. *Id.* at 234. The Fifth Circuit further explained that even had the defendants "failed to give [plaintiff] a reason for their decision not to renew his Employment Agreement or not to offer him an at-will employment position," the plaintiff could "point to no evidence in the record suggesting that he ever asked for these reasons or to any case law requiring an employer to voluntarily state a reason for its termination decision." *Id.*

With regard to her non-renewal, Plaintiff was given the reason for the Board's decision, i.e., that she maintained a low performing school, in the letter from Ellis dated six days after the

Board's meeting. While the Board did not similarly provide Plaintiff with the reason that she was denied a raise, there is no evidence that Plaintiff ever asked for such reason. Like in *Squyres*, the failure to voluntarily provide such a reason does not demonstrate pretext. *Id.*

Plaintiff next takes issue with the Board's conclusion that McEvans School was low performing under Plaintiff's direction. In making this determination, board members claim to have considered Statewide Accountability System ("SAS") reports generated by the Mississippi Department of Education. The reports include, among other things, a numerical aggregation of a school's student test scores in selected subjects for a given school year, termed the Quality Distribution Index ("QDI"), which ranges from zero to three hundred. The reports also include a correlating non-numerical rating system derived from the QDI. Examples of possible ratings are "failing," "low performing," and "successful."

For Plaintiff's first four years as principal at McEvans School, the school received consecutive QDI of 94, 88, 105, and 115, and corresponding ratings of "failing," "failing," "low performing," and "academic watch." In an attempt to undercut the board's determination, Plaintiff notes that the school had shown recent improvement at the time of her termination and that, during her tenure, her job became more difficult because McEvans School added eighth grade students. She also directs the Court to Ellis' deposition testimony, in which he stated that the Board did not, in his opinion, have a valid educational reason for non-renewing Plaintiff.

The Court finds that Plaintiff's evidence, at most, shows room for disagreement with the Board's interpretation and reliance on the QDI and SAS ratings. It is not the Court's function to conduct a *de novo* review of the evidence considered by the Board, and the wisdom of the Board's decision is not at issue for purposes of the pretext inquiry. *Murungi v. Xavier Univ. of La.*, 313 F. App'x 686, 690 (5th Cir. 2008) (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) ("[E]mployment discrimination laws are 'not intended to be a vehicle

for judicial second-guessing of employment decisions nor . . . to transform the courts into personnel managers.")). Hence, Plaintiff's arguments regarding the caliber of her performance are unavailing.

In a further attempt to demonstrate pretext, Plaintiff argues that through her denied raise and non-renewal, she was treated differently than Whitehead, the male principal of SHS. Plaintiff relies heavily on the SSD Employee Handbook, noting that one of the District's stated goals was for SHS to have a 95% graduation rate by the end of the 2012-2013 school year. The SAS reports show that SHS's graduation rate, though increasing under Whitehead, remained more than fifteen points below the targeted percentage. Plaintiff contends that, given SHS's failure to reach the target rate, the Board's decisions to give Whitehead a raise and to renew his employment—and to deny her both—satisfies her burden of showing pretext as evidence that SSD treated similarly situated employees differently for purposes of her gender discrimination and retaliation claims.[3]

In this regard, the Fifth Circuit requires "an employee who proffers a fellow employee as a comparator [to] demonstrate that the employment actions at issue were taken under 'nearly identical circumstances.'" *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). Circumstances are not "nearly identical" if the "plaintiff's conduct that drew the adverse employment decision" is not "nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* (citing *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004))

---

[3] Though evidence of disparate treatment between similarly situated employees is most often an inquiry at the prima facie stage of the *McDonnell Douglas* framework, the Supreme Court has clarified that "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 143, 120 S. Ct. 2097.

(other citations omitted). That is, "[i]f the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." *Id.* (citing *Wallace*, 271 F.3d at 221).

As previously discussed, McEvans School received average QDI of 100.5 and non-numerical ratings of "failing," "failing," "low performing," and "academic watch" for the four full years Plaintiff had been principal at the time of her non-renewal. In contrast, SAS reports show that for the two full years Whitehead had been principal, SHS's average QDI was 172.5, thirty-four percent higher than it had been for the two years before he became principal. Likewise, SHS's non-numerical ratings increased from "at risk of failing" and "academic watch" to "successful" and "high performing." Thus, the track records of McEvans School under Plaintiff and SHS under Whitehead were considerably different. The Court finds that this difference in school performance *accounts for* the difference in treatment between Plaintiff and Whitehead, and that they were not similarly situated. *See id.* Therefore, Whitehead's raise and employment renewal fails to show pretext.

Though not clearly articulated by Plaintiff, one additional potential argument concerning pretext exists with regard to Plaintiff's non-renewal. Sometime in 2009 or 2010, Georgia Ballard allegedly stated at a public meeting that the principal at McEvans "had to go." Ballard was then elected to the Board in 2012, and she voted against Plaintiff's renewal as principal at the February 2013 Board meeting.[4] At the July 2013 hearing in which the board upheld Plaintiff's termination, Ballard was asked whether she had previously advocated for the removal of Plaintiff as principal at McEvans school, and Ballard stated "no." Ballard then reversed course when

---

[4] Ballard was not a member of the School Board during the October 2012 meeting at which Plaintiff was denied a raise.

8

deposed in this matter and admitted that in a meeting preceding her election to the Board, she stated that Plaintiff needed to be removed.

The Court finds that Ballard's inconsistent statements, while perhaps evincing general dishonesty at the non-renewal hearing, fail to create a factual issue as to whether the Board's reason for Plaintiff's non-renewal was pretext for gender discrimination or retaliation. Moreover, none of Ballard's statements are connected in any way to gender or the filing of Plaintiff's EEOC charge.[5] *See Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003) (explaining that comment must demonstrate discriminatory animus to be probative of gender discrimination).

After reviewing the record as a whole, the Court finds that the Board's alleged failure to provide Plaintiff with its reasons, Plaintiff's disagreement with the board's conclusion that McEvans School was low performing, the allegedly preferential treatment of Whitehead, and Ballard's inconsistent statements fail to generate a question of fact as to whether the Board's decision was pretextual. Accordingly, the Title VII and Equal Protection Claims must be dismissed.

Due Process

Plaintiff next asserts procedural and substantive violations of the Due Process Clause, arguing that two female board members, Ballard and Evelyn Henry, were irreversibly biased against her and deprived her of a fair and impartial hearing.

The Due Process Clause of the Fourteenth Amendment provides: "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1. To establish a procedural or substantive due process claim, Plaintiff must first demonstrate that Defendants deprived her of a constitutionally protected liberty or property

---

[5] Indeed, according to Ballard's uncontradicted testimony, she had no knowledge of Plaintiff's previous EEOC charge when she voted not to renew Plaintiff's employment. *See James v. Fiesta Food Mart, Inc.*, 393 F. App'x 220, 224 (5th Cir. 2010) (finding plaintiff unable to show retaliatory motive when decisionmaker disavowed knowledge of protected activity in unrebutted declaration).

interest. *Stallworth v. Slaughter*, 436 F. App'x 337, 340 (5th Cir. 2011) (citing *Lollar v. Baker*, 196 F.3d 603, 607 (5th Cir. 1999)). Plaintiff asserts that her non-renewal was an unconstitutional deprivation of both liberty and property.

*Liberty*

A "discharge from public employment under circumstances that put the employee's reputation, honor or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment . . . ." *Rosenstein v. City of Dallas, Tex.*, 876 F.2d 392, 395 (5th Cir. 1989) (numerous citations omitted). Yet, "[n]either damage to reputation alone nor the stigma resulting from the discharge itself trigger[s] the protections of due process." *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006) (citing *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir. 1984)). A liberty interest is implicated "only when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" *Id.* (citing *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981)). A charge is only considered "stigmatizing" if it is "worse than merely adverse; it must be such as would give rise to a badge of infamy, public scorn, or the like." *Wells*, 736 F.2d at 256 n.16 (quoting *Ball v. Bd. of Trustees of Kerrville Indep. Sch. Dist.*, 584 F.2d 684, 685 (5th Cir. 1978)) (internal quotation marks omitted).

According to Plaintiff's deposition testimony, she has completed more than fifty applications for employment since her non-renewal, on which she has been required to admit that she was non-renewed. She testified that she has been asked by various interview panels about the non-renewal and her pending lawsuit. And although she obtained employment for a short stint in a non-administrative position at a school in Arkansas, that position was phased out, and she testified that she has been unsuccessful in other attempts to find employment. Plaintiff contends

that this inability to obtain comparable employment to her position at McEvans School demonstrates a deprivation of liberty.

But as the Supreme Court and Fifth Circuit have explained: "[m]ere proof that nonrenewal might make an individual less attractive to other employers does not, by itself, implicate a liberty interest." *Wells*, 736 F.2d at 256 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 574 n.13, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)); *Dennis v. S. & S. Consol. Rural High Sch. Dist.*, 577 F.2d 338, 340 (5th Cir. 1978). Additionally, Plaintiff has not argued—nor does the Court find—that the Board's determination of McEvans School being low performing would give rise to a "false and defamatory impression" about Plaintiff necessary to constitute a stigmatizing injury. *Bledsoe*, 449 F.3d at 653. Plaintiff has accordingly failed to create a factual issue as to whether her non-renewal constituted a deprivation of her liberty.

*Property*

It is well established: "The Constitution does not create property interests; they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Lollar*, 196 F.3d at 605 (quoting *Schaper v. City of Huntsville*, 813 F.2d 709, 713 (5th Cir. 1987)) (internal quotation marks omitted); *see also Roth*, 408 U.S. at 577, 92 S. Ct. 2701. In the context of public employment, a state employee possesses "a property interest in her job if she has a legitimate claim of entitlement to it, a claim which would limit the employer's ability to terminate the employment." *Johnson v. Sw. Miss. Reg'l Med. Ctr.*, 878 F.2d 856, 858 (5th Cir. 1989). It is undisputed that Plaintiff's employment was set to be renewed on a yearly basis, and that she had no contract right to be employed for any longer than she was. Plaintiff nonetheless contends that two different provisions of the Mississippi Code vested her with a legitimate claim of entitlement in continued employment.

First, Plaintiff argues that the Board was limited in its ability to non-renew her employment by Mississippi Code Section 37-9-15, under which a superintendent's recommendation for principal is to be accepted unless "good reason to the contrary exists . . . ." This Court, in *Housley v. N. Panola Consol. Sch. Dist.*, 656 F. Supp. 1087, 1089 (N.D. Miss. 1987), specifically rejected Plaintiff's theory. In *Housley*, as here, a former principal was recommended by the superintendent for reemployment, and the school board voted against the recommendation. *Id.* The Court held that Section 37-9-15's "good reason" language does not create a legitimate claim of entitlement to continued employment. *Id.* at 1090. In so holding, it relied on a prior case from the Mississippi Supreme Court, which explained that in "non-reemployment proceedings, good cause is essentially an irrelevant concept[,]" and that "the school administration may refuse to rehire a teacher for good reason, for bad reason, or for no reason at all." *Id.* (quoting *Miss. Emp't Sec. Comm'n v. Phila. Mun. Separate Sch. Dist. of Neshoba Cnty.*, 437 So. 2d 388, 396 (Miss. 1983)).[6] This Court also noted that, if the requirement of "good reason to the contrary" created a property right, then any individual recommended as principal by the superintendent would have a due process interest in continued employment, even if such individual never worked a day for the school district. *Id.* Applying *Housley*'s teachings to this case, the Court finds that Section 37-9-15 and Ellis' recommendation did not provide her with a property interest in continued employment.

Plaintiff also relies on Section 37-9-109, which provides a non-renewed employee with the right, upon written request, to a "hearing at which to present matters relevant to the reasons given for the proposed nonreemployment . . . ." Yet, as this Court has previously explained, this hearing requirement is nothing more than an additional statutory *procedural* right that an

---

[6] Though *Philadelphia* involved the non-renewal of a teacher rather than a school principal, the phrase "good reason to the contrary" is present in the provisions governing both situations, and thus the Mississippi Supreme Court's reasoning extends to the context of principal non-renewals. *Id.* (citing MISS. CODE ANN. §§ 37-9-15, 17).

employee may be entitled to under Mississippi law; it does not provide the plaintiff with the protected *property* necessary to support a federal due process claim. *Pruett v. Dumas*, 914 F. Supp. 133, 137-38 (N.D. Miss. 1996), *aff'd*, 98 F.3d 1339 (5th Cir. 1996). Indeed, through the adoption of Section 37-9-109, Mississippi lawmakers made clear that "[i]t is the intent of the Legislature to establish *procedures* to provide for accountability in the teaching profession . . . [and] *not* to establish a system of tenure . . . ." MISS. CODE ANN. § 37-9-101 (emphasis added); *see also Pruett*, 914 F. Supp. at 137 n.4; *Housley*, 656 F. Supp. at 1091.

Thus, the "good reason" language in Section 37-9-15 and the requirement of a hearing provided in Section 37-9-109 cannot create a right to continued employment where it did not otherwise exist through contract or some other legitimate expectation.

The Court finds that Plaintiff has not established a constitutionally cognizable liberty or property interest within the meaning of the Fourteenth Amendment. Her substantive and procedural due process claims are therefore dismissed.

*Conclusion*

Defendants' Motions for Summary Judgment [70, 71, 72, 73, 74, 75, 76] are hereby GRANTED. Plaintiff has failed to create a genuine issue of material fact on her claims under Title VII, the Equal Protection Clause, and the Due Process Clause against SSD and the members of its School Board. A separate judgment shall issue this day. CASE CLOSED.

SO ORDERED, this 24th day of August, 2015.

/s/ Sharion Aycock  
**UNITED STATES DISTRICT JUDGE**